J-A21045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| G.A., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| J.S., | : | |
| | : | |
| Appellee | : | No. 860 EDA 2016 |

Appeal from the Order February 10, 2016
in the Court of Common Pleas of Bucks County,
Civil Division, No(s): A06-06-61075-C-32

BEFORE:  BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED NOVEMBER 03, 2016**

G.A. ("Father") appeals from the Order granting sole legal and primary physical custody of S.A. ("Child"), d/o/b 7/25/05, to J.S. ("Mother"), and directing Father to pay $73,150.00 to Mother in counsel fees.  We affirm.

The trial court has set forth an extensive factual and procedural history in its Opinion, which we adopt for the purpose of this appeal.  ***See*** Trial Court Opinion, 3/28/16, at 1-8.

Relevantly, Father and Mother, who never married, are the natural parents of Child.  In March 2006, Father filed a Custody Complaint seeking primary physical custody of Child.  On July 1, 2008, the trial court entered an Order granting Father and Mother shared legal and physical custody of Child.  On April 29, 2009, Father filed a Petition for Modification of Custody. Following a custody evaluation and sixteen hearings, the trial court entered

a Custody Order granting Mother sole legal custody and primary physical custody, and Father partial physical custody every second and fourth weekend. The Order also granted Mother custody of Child on most Jewish holidays and Father custody of Child on most Christian holidays. The trial court additionally ordered Father to pay $73,150.00 in counsel fees within 90 days of the Order.

Father filed a timely Notice of Appeal and a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Father raises the following questions for our review:

1. Did the trial court commit an abuse of discretion or error of law when it awarded sole legal custody of [Child] to [Mother]?

2. Did the trial court commit an abuse of discretion or error of law when it awarded primary physical custody of [Child] to [Mother]?

3. Did the trial court commit an abuse of discretion or error of law when it [o]rdered [Father] to pay an assessment of counsel fees in the amount of $73,150.00?

Brief for Appellant at 4 (issues renumbered).

In custody cases,

our scope [of review] is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if

they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Additionally,

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

We will address Father's first two issues together. Father contends that the trial court committed an abuse of discretion in awarding Mother primary physical and sole legal custody of Child. Brief for Appellant at 32, 35, 37. Father argues that the trial court based its decision upon his refusal to encourage and permit contact with Mother. *Id*. at 35-37. Father asserts that Mother's testimony was not credible and that Mother's own actions were harmful to Child's best interests. *Id*. at 35-36. Father claims that Mother disparaged his character and falsely misrepresented his character at the hearings. *Id*. at 36-37. Father also claims that Mother's history of conduct toward him raises serious concerns as to her ability to make decisions on behalf of Child. *Id*. at 37-38. Father argues that Mother will exclude him from Child's life. *Id*. at 38.

In any custody case decided under the Child Custody Act ("Act"),[1] the paramount concern is the best interests of the child. **See** 23 Pa.C.S.A. §§ 5328, 5338; **see also E.D. v. M.P.**, 33 A.3d 73, 79 (Pa. Super. 2011). Section 5328(a) provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

---

[1] **See** 23 Pa.C.S.A. §§ 5321 *et seq*. While the Petition for Modification of Custody was filed prior to the effective date of the Act, *i.e.*, January 24, 2011, the Act applies to this case as hearings were held after the effective date. **See C.R.F.**, 45 A.3d at 445 (holding that, if the custody evidentiary proceeding is held after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply even if the modification petition was filed prior to the effective date).

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328;[2] *see also E.D.*, 33 A.3d at 79 n.2.

---

[2] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services) and, therefore, was in effect at the time of the hearings in this matter.

"All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted). Moreover, section 5323(d) mandates that, when the trial court awards custody, it "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). The trial court may not merely rely upon conclusory assertions regarding its consideration of the section 5328(a) factors in entering an order affecting custody. ***M.E.V. v. F.P.W.***, 100 A.3d 670, 681 (Pa. Super. 2014). However, "[i]n expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***A.V. v. S.T.***, 87 A.3d 818, 823 (Pa. Super. 2014) (citation and quotation marks omitted).

In its Opinion, the trial court undertook an analysis of the section 5328(a) factors, and determined that it was in Child's best interests to modify the existing custody Order and to grant Mother primary custody during the school year. ***See*** Trial Court Opinion, 3/28/16, at 7-8, 10. Father's arguments challenge the trial court's credibility determinations and the weight given to the statutory factors, specifically section 5328(a)(1), and would require this Court to reassess and reweigh the evidence in Father's favor. It is well-established that we cannot disturb the trial court's credibility

determinations or reweigh the evidence. **See E.D.**, 33 A.3d at 76 (stating that "with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge[,] who presided over the proceedings and thus viewed the witnesses first hand"); **see also Robinson v. Robinson**, 645 A.2d 836, 838 (Pa. 1994) (stating that on issues of credibility and weight of the evidence with regard to custody orders, "appellate courts must defer to the findings of the trial judge[,] who has had the opportunity to observe the proceedings and the demeanor of the witnesses."). Although Father is not satisfied with the weight that the trial court afforded to the statutory factors in rendering its custody decision, our review of the record reveals that the trial court's findings of fact are thoroughly supported by the record, and its conclusions are sound. **See C.R.F.**, 45 A.3d at 443 (stating that this Court cannot reweigh the evidence supporting the trial court's determinations as long as there is evidence to support the findings). Therefore, we conclude that the trial court did not abuse its discretion, and defer to its custody decision. **See id**.

In his third claim, Father contends that the trial court abused its discretion in ordering him to pay $73,150.00 in counsel fees. Brief for Appellant at 8, 32. Father argues that his conduct was not dilatory, obdurate, or wholly vexatious. **Id**. at 8, 9-10, 11, 12-14, 15-21, 30. Father asserts that he did not re-litigate any issue, and that his filings were based upon his request for primary custody of Child and the custody

evaluator's determination that Child should have a primary parent. *Id*. at 8-9, 12; *see also id*. at 13-14 (wherein Father argues that Child is becoming injured by Mother and Father's conflict and that one parent should have primary custody). Father points out that many years have passed since the filing of the Petition for Modification due to the availability of counsel and the court, the length of each hearing, and various legitimate Petitions filed by both parties. *Id*. at 9-10, 11-12, 15-20, 28-31; *see also id*. at 29 (wherein Father argues that the trial court erroneously stated that Father sought to turn Child against Mother by prolonging litigation, as such a statement was unsupported in the record). Father specifically claims that all of his pleadings "alleged separate and legitimate factual circumstances and legal issues that typically arise in custody cases. … [A]ll of [Father's] filings were filed with the sole purposes of promotion of [C]hild's best interest." *Id*. at 20.

Father also argues that the trial court failed to give weight to Mother's obdurate and vexatious behavior. *Id*. at 21. Father contends that Mother fabricated encounters between Father and Mother to the custody evaluator and parent coordinator. *Id*. at 21, 22-23; *see also id*. at 21-22 (wherein Father argues that Mother's friend stated that Father pushed Mother in the face while Mother was holding Child, and Father called Mother a kike). Father further contends that Mother falsely accused him of being part of the Russian mafia, breaking into Mother's home and car, and having a drinking

problem. *Id*. at 24-27. Father claims that Mother's actions required him to respond by filing pleadings and addressing the issues in court. *Id*. at 27-28. Father additionally asserts that the trial court justified its award of counsel fees by pointing out that he was able to pay his legal fees, totaling $156,098.58. *Id*. at 31. Father argues that he should not be penalized based upon his ability to pay the fees. *Id*. at 31-32.

Pursuant to section 5339, in a custody matter, "a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S.A. § 5339.[3] "Our standard of review of an award of counsel fees is well settled: we will not disturb a trial court's determination absent an abuse of discretion." *A.L.-S.*, 117 A.3d at 361. While a separate evidentiary hearing is preferred, "[i]f the record supports a trial court's finding of fact that a litigant violated the conduct provisions of the relevant statute providing for the award of attorney's fees, such award should not be disturbed on appeal." *Kulp v. Hrivnak*, 765 A.2d 796, 799 (Pa. Super. 2000) (citation omitted).

The trial court addressed Father's claim as follows:

---

[3] We note that "[o]bdurate is defined as unyielding or stubborn." *In re Padezanin*, 937 A.2d at 484. "A suit is 'vexatious,' such as would support an award of counsel fees in a child custody case, if it is brought without legal or factual grounds and if the action served the sole purpose of causing annoyance." *A.L.-S. v. B.S.*, 117 A.3d 352, 362 (Pa. Super. 2015).

Father's conduct was indeed repetitive, and his Petitions sought to merely rehash and reargue issues decided years before. [Child] is very much aware of this ongoing battle between the parties. Additionally, the Parent-Coordinators assigned to this case all determined that Father will continually reargue any issue, no matter how insignificant. Father's attempts at obstruction and his dilatory conduct were both well-established and not contradicted, and an award of fees to Mother's counsel was therefore entirely appropriate.

Furthermore, Father himself has requested that [the trial c]ourt award full custody to one parent or the other. He believes that a shared custody arrangement would not be in [Child's] best interests. Despite this position, sixteen (16) hearings have been held, lasting for nearly the entirety of [C]hild's ten[-]year life.

Trial Court Opinion, 3/28/16, at 11; *see also id*. at 2-7 (wherein the trial court details, *inter alia*, Father's combative behavior and conduct with the Parent-Coordinators, Father's actions toward Mother, and Father's failure to abide by court orders). We conclude that the record in this case supports the trial court's finding that the conduct of Father was obdurate and vexatious. *See id*. at 11.

Further, contrary to Father's claims regarding Mother's conduct, we conclude that her alleged misconduct did not negate Father's conduct and behavior during the resolution of the custody matter. *See* 23 Pa.C.S.A. § 5339. Moreover, Father's ability to pay his own counsel fees does not demonstrate that the trial court abused its discretion in awarding Mother counsel fees in this matter. Thus, we will not disturb the trial court's decision to award counsel fees to Mother.

Order affirmed.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/3/2016

IN THE COURT OF COMMON PLEAS
BUCKS COUNTY, PENNSYLVANIA
FAMILY DIVISION



Case # 2006-61075 C B09   11171859

Code: 5214        Judge: 18
Patricia L. Bachtle, Bucks County Prothonotary
Rcpt. Z1494454  3/28/2016 1:08:43 PM

G. A.

v.

J. S.

No. 2006-61075-C

CUSTODY

CHILDREN'S FAST TRACK
APPEAL

## OPINION

G. A.

("Father") appeals from this court's Order of February 10, 2016, awarding sole legal custody and primary physical custody of the child, S. A. (D.O.B. 7/25/2005) to J. S. ("Mother"). We also entered an Order directing Father to pay $73,150.00 to Mother as counsel fees.

This appeal has been designated as a "Children's Fast Track Appeal." Therefore, this Court is required pursuant to Pa. R.A.P. 1925(a)(2)(ii) to file an Opinion specifying the reasons for our Order within thirty (30) days of receipt of the Notice of Appeal and the Concise Statement of Errors Complained of on Appeal.

The complete Notes of Testimony have not yet been transcribed, however, the Notes of the February 10, 2016 Hearing and Order (116 pages) have been transcribed and are being forwarded with this Opinion. A written copy of our Order, dated March 16, 2016, is also attached.

Litigation in this matter commenced on March 28, 2006, when Father filed a Petition for Custody of Minor Child. Since then, there have been sixteen (16) hearings at the request of Father, from June 29, 2010 until the final hearing on February 10, 2016.

In our Order of February 10, 2016, this Court summarized and reviewed the evidence presented.

Dr. Anthony Pisa was the agreed custody evaluator when the case began in 2006. He immediately determined that this was a "high-conflict case." N.T. 2/10/2016, 73. Dr. Pisa expressed sincere doubts that the parties had the ability to successfully co-parent, and that the situation was "toxic" for the child. N.T. 2/10/2016, 75.

Dr. Pisa was also appointed as the assigned Parent-Coordinator and made another important determination. He remarked that, no matter what decision he entered in that capacity, "no matter how minor or mundane," Father constantly refused to accept his decisions. N.T. 2/10/2016, 77. He also noted that Father continually lashes out at Mother and criticizes her abilities as a parent if Father does not receive a favorable decision from the Parent-Coordinator. N.T. 2/10/2016, 78. Dr. Pisa also described Father as "angry" and believes Father is purposefully making life exceedingly difficult for Mother and the child.. N.T. 2/10/2016, 83.

Dr. Steven Cohen, a psychologist who also acted as a later Parent-Coordinator also testified. In August 2012, Dr. Cohen resigned from this case. Dr. Cohen's remarks concerning the case were quite telling: "This particular case is the most difficult one in my many years of coordination." Dr. Cohen explained that Father's argumentative behavior was the reason for his resignation, and that Father continues to argue about decisions made as early as 2008. N.T. 2/10/2016, 88. Dr. Cohen was unable to utilize the Parent-Coordinator process because of Father's course of conduct in constantly thwarting this process. In Dr. Cohen's view, this family, without the intervention of a Parent-Coordinator, would be "doomed." N.T. 2/10/2016, 89.

Additionally, Father became "verbally abusive" on multiple occasions to Dr. Cohen's staff. N.T. 2/10/2016, 89-90. In Dr. Cohen's view, Father, throughout these proceedings, demonstrated a lack of good faith. N.T. 2/10/2016, 90. Dr. Cohen, in communicating with this Court, declared that "I am resigning as the Parent-Coordinator effective immediately." N.T. 2/10/2016, 87. He continued:

Father

> The principal reason for this difficulty is the behavior and attitude of ▮▮▮▮▮▮.
> He has always been exceedingly argumentative, never accepting a decision without arguing about it, and continues to argue about decisions made long ago. He continues to try to argue about decisions made as early as 2008. So he won't let it rest.

2

> In the beginning, I had face-to-face meetings with the parties and obtained agreements from both parties, only to have ████████ later deny that he agreed to those negotiated issues. *Father*

N.T. 2/10/2016.

Following Dr. Cohen's resignation, Richard Moore, Esquire was appointed as the new Parent-Coordinator in late 2012. N.T. 2/10/2016, 96.

Throughout the many hearings before this Court, we heard additional testimony regarding Father's conduct, including an accusation that Father unilaterally removed the Child from school, only to then take her to a shopping mall. N.T. 2/10/2016, 76. Father and Mother were also quarreling over whether their daughter should take violin or piano lessons. Dr. Cohen had previously ordered that the Child take violin lessons, and once again, Father became combative and discontinued her lessons. N.T. 2/10/2016, 97.

On several occasions, Father would deliberately delay in dropping off the child to Mother, knowing that Mother and daughter had previously scheduled events planned for that day. N.T. 2/10/2016, 93-94. As an example, Father dropped off the child to Mother over forty minutes late on Mother's Day, 2012, despite knowing they had a special breakfast planned at 8:00 a.m. sharp. For Hanukkah, Father dropped off Child four hours late, causing Mother and Child to miss a pre-arranged performance of "The Nutcracker" in New York City. N.T. 2/10/2016, 103-104. There was also evidence that Father would send in excess of fifty (50) e-mails and place over twenty (20) telephone calls to Mother on days which Father knew were important to Mother and Child, such as pre-scheduled and pre-approved Jewish holidays. N.T. 2/10/2016, 77.

Additionally, there was evidence that Father became verbally abusive towards Mother on numerous occasions, including many instances in the presence of the child. N.T. 2/10/2016, 101, 103. On at least one occasion, the altercation between Father and Mother turned physical. N.T. 2/10/2016, 102.

On February 10, 2016, a sixteenth hearing was held. We again noted Father's combative and argumentative nature throughout the course of this litigation since 2006, and stated:

3

We've had three evaluations: July 2007, a follow-up in November of 2007, a final one six years ago, January 25th, 2010. We have appointed a Parent-Coordinator in 2008. Dr. Cohen resigned in 2012. We vacated the Parent-Coordinator Order because of Dr. Cohen's resignation. We appointed Richard Moore as a Parent-Coordinator. Same process, different coordinator, same result: Father will not accept the decision.

[...]

For whatever reason, Father will not abide by an Order, no matter who enters it, no matter how well-reasoned, no matter how much it may be in the interest of [the Child], and that is going to be frightening for this girl. And even [Father's counsel] says that he can anticipate problems in the future, and my obligation is to make sure there are no problems in the future.

N.T. 2/10/2016, 104-105.

Following our summary of the testimony, we issued our Custody Order. Prior to the entry of our Order, Father expressed his desire, through counsel, that, regardless of the outcome, Father "want[s] to leave here with one parent having primary custody." N.T. 2/10/2016, 106.

In our Order of February 10, 2016, we said at various points:

When we delve deeper into Dr. Pisa some months later, he said something very telling. He said that he had serious issues with Father's judgment on many issues. For example, ▓▓▓▓ apparently had a rash, and Father tended to blame that upon the Mother rather than contacting the child's pediatrician; that ▓▓▓▓ was kept out of school by the Father because he alleged that she's sick, and yet there was evidence that despite this alleged illness, that Father took the child to the mall.

N.T. 2/10/2016, 75-56.

When he (Dr. Pisa) questioned the Father's judgment, he also highlighted the fact that Father understood that Mother was concerned with certain Jewish holidays. Please, understand, ▓▓▓▓, ▓▓▓▓, that this Court, as should be all Courts, are religiously neutral. If the child, by agreement, is raised in the Jewish faith, we leave that to the parents. If the parents decide the child should be raised in the Christian faith, that's a parental decision. If you decide that she should be Wiccan, we'll abide by that. But it's clear and abundant that the parties have, at least, a tacit agreement that Father would celebrate the Christian holidays and Mother would celebrate the Jewish holidays because they were important to each other.

4

So, knowing that, what does *Father* [redacted] do? He, again being passively-aggressive, calls Mother 20 or more times on a Jewish holiday. He knows that will be disruptive. He knows it will push Mother's buttons. He knows she'll be upset.

N.T. 2/10/2016, 76-77.

We also noted in our findings as follows:

So we go on to other hearings, and now the message is clear: There's something wrong here. Father is not abiding by reasonable, rational decisions. Father is on notice that he should not keep the child out of school on his whim or caprice, except he continues to do so. We heard the testimony about keeping *Child* [redacted] out of school. It makes no impression on him. He continues the same type of conduct.

N.T. 2/10/2016, 79.

[Dr. Pisa] said "Father can easily be triggered to anger. So there is evidence that he was assaultive to the Mother.

N.T. 2/10/2016, 79-80.

Then we had heard testimony that on a Jewish holiday you had continually, knowing it was important to Mother, and therefore, important to the child, made about a hundred calls to Mother. You would think that would send a message that it shouldn't happen again; but we find out that on another holiday there were at least 14 cell phone calls to Mother. The telephone records confirm that on a holiday, Rosh Hashanah and Yom Kippur - again important to the child, just as important to the Mother – 31 telephone calls were made. So, of course, Dr. Pisa questions the rationality of this behavior and the Father's judgment.

N.T. 2/10/2016, 81-82.

We also noted:

[Dr. Pisa] said that Father habitually – not once in a while, not by happenstance – drops the child off late at The Goddard School. There are always excuses for lateness, but this is a pattern. He does it, we believe, and we find as a fact, to irritate the Mother. And what happens? We believe the testimony. Because Father is late, Mother is late for work. But his is a pattern of activity where he hasn't gotten his way, he hasn't been able to impose his will, so he will make a studied attempt to affect the Mother without thinking at all how this may affect *Child* [redacted].

Again, she is still young, but it shows what Dr. Pisa has confirmed: He described Father as rigid. He said, no matter what you say to *Father* [redacted], no matter what decision you make, no matter how well-reasoned, no matter how often you explain it, he refuses to accept it. That is a continuing pattern.

N.T. 2/10/2016, 82-83.

5

We further highlighted:

> Dr. Pisa is still on the witness stand. Now it is July of 2011. [Child] is getting older; Dr. Pisa is getting richer. He says that Father, despite all this litigation, is still as rigid as ever. He is inflexible. He not only won't follow an Order that Dr. Pisa imposes, but he is convinced that Father won't even follow a Court Order. The Father is a bright guy, and he has to know that if he doesn't follow a Court Order, serious consequences could result. But at least the evaluator believes that this is lost on Father.
>
> Father won't listen to anybody who makes a decision about anything in this case.

N.T. 2/10/2016, 85.

> [Father's counsel] has said this was a one-time misstep. No, because we accept Dr. Cohen's statement that [Father] has shown "a pervasive pattern of not responding to questions directly, arguing with decisions." And he does it after-the-fact, after the decision is made. And he says that [Father] has been unwilling or unable to use the process of Parent-Coordinator in any positive, productive way.

N.T. 2/10/2016, 88-89.

We also noted that Father's aggressive responses were not only directed toward Mother:

> [Father] became very argumentative and verbally abusive with [Dr. Pisa's] office manager, who tried to reason with him for 20 minutes. And despite what [Father's counsel] says, this was not a one-and-done incident. [Dr. Pisa] says, "This is not the first time he has been argumentative with my office manager."

N.T. 2/10/2016, 89-90.

With regard to Father's continuing litigation, we noted:

> We still have issues about what [Father] does for a living. It's not my business, but you're curious because somebody is financing this war. [Father] tells me that he gets loans, not only from relatives, but from one of his best friends. And I ask him, and he was asked, how do you support yourself? And he tells me on $300.00 per week. I don't believe that. It's possible to get by on a pittance, but it tends to show me there is some serious issues with his credibility.

N.T. 2/10/2016, 92.

We note that, despite Father's contention that he makes $300.00 per week, his legal fees, totaling $156,098.58 have been paid in full.

We also contrasted Mother's attempts at co-parenting with Father's refusal to co-parent:

6

Mother does keep Father advised of ~~████~~ *Child's* activities, medical information, school programs, [and] vacations. She provides constant, continuing updates. She's very specific. Dr. Pisa recognizes that, but then resigns.

N.T. 2/10/2016, 96.

In issuing our final Order, we outlined the following considerations:

Which party is more likely to encourage and permit frequent contact? Clearly the Mother.

Has there been past abuse committed? Not tragic abuse in the sense that somebody wound up in the hospital or had a loss of a member or severe pain, but it's been there. It hasn't been a risk of harm to the child, but it could be. We tend to believe, given [Father]'s past behavior, that this could occur. We've heard of emotional abuse. I'm sure that's to some degree on both sides.

There doesn't seem to be any difficulty with physical safeguards for supervision of the child. Each party is clearly capable of performing duties on behalf of the child. Despite all of this, I still think that ~~████~~ *Father* is a good father. He's just a bad boyfriend.

Extended family is neutral. They have enough outreach, if necessary. There's no siblings.

The child doesn't have a preference, nor do we care if the child did. But I would guess that her preference, despite her maturity – and it's at a high level – she would say my preference is that my parents don't fight, but I can't enforce that.

There has been, at least superficially, and attempt by [Father] to turn the child against the other parent by castigating the Mother, calling her names, especially if it happens in front of her, but more importantly, by challenging every decision. The child knows that there's a conflict, and while it's not violence, that has been the end result.

Both Mother and Father can maintain a loving, stable, consistent, nurturing relationship with ~~████~~ *Child*, and more adequately, both can address her emotional needs.

Both can easily address her educational needs, except that's Mother's decision hereinafter. Blessedly the child has no special needs.

The parties live close to each other – Newtown-Holland; both nice neighborhoods, both within a very short distance. It's not an issue.

Both parties have in the past been able to make appropriate childcare arrangements.

7

What is the level of conflict between the parties? Strong. High.

What about their ability to cooperate with one another? Not good. They're just going to have to do it, otherwise one or both will be back into court, someone will pay more attorney's fees, and someone could go to jail.

N.T. 2/10/2016, 110-112.

Upon these considerations, we granted sole legal custody and primary physical of the child to Mother. We directed that Father have custody of the child for the second and fourth weekend of every month, from Friday at 6:00 p.m. until Sunday at 6:00 p.m. Father is to have custody of the child for Father's Day, and conversely, Mother shall have custody of the child for Mother's Day. Father is also to have custody of the child for Christmas Eve, Christmas Day, Good Friday, and Easter. Mother is to have custody for the two days of Rosh Hashanah and Erev Yom Kippur. N.T. 2/10/2016, 106-109.

In addition to awarding to custody to Mother, we also directed that Father pay $73,150.00 in attorney's fees to Mother's counsel. We found that the past decade of conduct on the part of Father was "dilatory, wholly vexatious and entirely obstreperous." While we certainly recognize that Father has a right to petition for a change of custody, "he has no right to attempt to thwart the best interests of his child through the courts, and that's what he's done." NT. 2/10/2016, 109-110.

Father raises the following nine (9) issues on appeal, *verbatim*:

1. Whether the lower Court abused its discretion or committed an error of law when it awarded an assessment of $73,150.00 in counsel fees to Defendant/Appellee's Counsel, in contra to due process requirement when it was raised *sua sponte* by the Court.
2. Whether the lower Court abused its discretion or committed an error of law when it awarded an assessment of $73,150.00 in counsel fees to Defendant/Appellee's Counsel, based on unreasonable conclusions in light of trial Court's sustainable findings of fact.
3. Whether the lower Court's Order awarding an assessment of $73,150.00 in counsel fees to Defendant/Appellee's Counsel was confiscatory in nature, based on unreasonable conclusions in light of the trial Court's sustainable findings of fact.
4. The lower Court's award [of] an assessment of $73,150.00 in counsel fees to Defendant/Appellee's Counsel was not supported by the evidence presented

8

pursuant to 23 Pa. C.S.A. §5339; Appellant/Father was not obdurate, vexatious, repetitive, or acting in bad faith in his request for hearings, but rather, was exercising his right as the parent of the minor child acting in the child's best interest.

5. Whether the lower Court's award [of] an assessment of $73,150.00 in counsel fees to Defendant/Appellee's Counsel was unreasonable in light of the evidence presented on the record and in the circumstances of this case because the lower Court failed to give appropriate weight to the Appellee's own attempts to indulge in vexatious and repetitive presentation and testimony.

6. Whether the lower Court erred when it failed to make a finding of shared legal custody based upon its sustainable findings and the evidence presented.

7. Whether the lower Court's Order awarding sole legal custody to Appellee was unreasonable in light of the evidence presented on the record and the circumstances of this case because, when considering the best interests of the child, the lower Court failed to give appropriate weight to the Appellee's ongoing attempts to exacerbate situation between parties thus portraying Appellant/Father in a false lights, which is problematic in light of the lower Court's conclusion that Appellant does not cooperate with Mother and refuses to co-parent, when Appellee/Mother is guilty of same.

8. The lower Court's award of sole legal custody to Defendant/Appellee was not supported by the evidence presented under the custody factors enumerated in 23 Pa. C.S.A. §5328(a), the majority of which weighed in favor of Appellant/Father, and was thus unreasonable in light of the lower Court's sustainable findings.

9. Whether the lower [C]ourt abused its discretion or committed an error of law when it awarded Defendant/Appellee, J██ S██████, sole physical custody of the minor child based upon unreasonable conclusions in light of the trial Court's sustainable findings of fact.

Concise Statement of Errors Complained of on Appeal, March 11, 2016.

We will first address Appellant's custody arguments, and then address the imposition of attorney's fees.

It is well-established that judges are granted broad discretion in custody matters. The Superior Court of Pennsylvania has held that:

"In reviewing a custody order, our scope is of the broadest type and our standard is [an] abuse of discretion...Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court."

9

*M.O. v. J.T.R.*, 85 A.3d, 1058, 1061 (Pa. Super. 2014) (*citing* V.B. v. J.E.B., 55 A.3d 1193, 1197 (Pa. Super. 2012)).

Father's contends that the Custody Order was not supported by the evidence deduced at trial, and that the factors enumerated in 23 Pa. C.S.A. §5328(a) were not properly considered because the majority of factors weighed in favor of Father.

Superior Court precedent does not require a specific level of detail when issuing a Custody Order. All that is required is a consideration of the enumerated factors, and that "the custody decision is based upon these considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013) (*appeal denied* 68 A.3d 909). Undoubtedly, a review of the record in this case illustrates that the enumerated factors were adequately considered in issuing this Order.

Father's contention that the custody Order was unreasonable because "a majority [of the enumerated factors] weighed in favor of Appellant/Father" is unsupported by the record. The Notes of Testimony from the February 10, 2016 illustrate that, if anything, the majority of the considerations weighed in favor of Mother and *against* Father. Furthermore, deciding a proper custody arrangement involves more than a raw tallying of factors, as Father would seem to suggest. It is clear that "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id.* at 339. Therefore, even if a greater number of factors weighed in favor of Father as compared with Mother, we would not be obligated to award custody on that basis alone.

Here, we found Father's refusal to encourage and permit frequent contact with Mother to be most compelling. Father's history of emotional outbursts at Mother in the presence of the child is also an important consideration, as well as Father's propensity to turn the child against Mother by continually prolonging litigation. This is contrary to the child's best interests. This Court therefore suggests that the consideration of the factors outlined in 23 Pa.C.S.A. §5328(a) was more than sufficient.

Attorney's fees may be awarded to a party in a custody matter pursuant to 23 Pa.C.S.A. §5339. Under that section, a court is permitted to award "reasonable interim or final counsel fees, costs, and expenses to a party if the court finds that the conduct of another party was *obdurate, vexatious, repetitive, or in bad faith*. 23 Pa.C.S.A. §5339 (emphasis added).

10

It is well-settled that an award of attorney's fees will only be set aside if the trial court abused its discretion, or the Court failed to follow proper legal procedures or misapplied the law. *A.L-S v. B.S.*, 117 A.3d 352, 361 (Pa. Super. 2015) (*See also, Don Yuan Chen v. Saidi*, 100 A.3d 587, 592 (Pa. Super. 2014). No evidentiary hearing is required in determining whether an award of counsel fees is appropriate, when the facts necessary to make such a finding are admitted and undisputed. *Kulp v. Hrivnak*, 765 A.2d 796 (Pa. Super. 2000).

Here, however, Father's conduct was indeed repetitive, and his Petitions sought to merely rehash and reargue issues decided years before. The child is very much aware of this ongoing battle between the parties. Additionally, the Parent-Coordinators assigned to this case all determined that Father will continually reargue any issue, no matter how insignificant. Father's attempts at obstruction and his dilatory conduct were both well-established and not contradicted, and an award of fees to Mother's counsel was therefore entirely appropriate.

Furthermore, Father himself has requested that this Court award full custody to one parent or the other. He believes that a shared custody arrangement would not be in his daughter's best interests. Despite his position, sixteen (16) hearings have been held, lasting for nearly the entirety of the child's ten year life.

We therefore urge that our Custody Order of February 10, 2016, awarding primary physical custody and sole legal custody to Mother, as well as awarding Mother's counsel $73,150.00 in attorney's fees, be affirmed.

BY THE COURT:

DATE 3/24/16

ALAN M. RUBENSTEIN,  J.

11